1  David V. Jafari SBN: 207881
   djafari@jafarilawgroup.com
2  Saul Acherman SBN: 288036
   sacherman@jafarilawgroup.com
3  JAFARI LAW GROUP, INC.
   18201 Von Karman Ave, Suite 1190
4  Irvine, California 92612
5  Telephone: (949)362-0100

6  Attorneys for Plaintiff:
7  Honey & Butter, LLC

UNITED STATES DISTRICT COURT CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION – SANTA ANA

| | |
|---|---|
| HONEY & BUTTER, LLC, a California Limited Liability Company, <br><br> Plaintiff, <br><br> vs. <br><br> Christine Park, an individual; and DOES 1 through 10, <br><br> Defendants. | Case No.: 8:17-cv-02194 <br><br> **COMPLAINT FOR:** <br><br> 1. **FALSE DESIGNATION OF ORIGIN;** <br> 2. **TRADEMARK INFRINGEMENT;** <br> 3. **UNFAIR COMPETITION IN VIOLATION OF THE LANHAM ACT;** <br> 4. **TRADEMARK DILUTION UNDER THE LANHAM ACT;** <br> 5. **CALIFORNIA TRADEMARK DILUTION UNDER CAL. BUS. & PROF. CODE § 14247;** <br> 6. **UNFAIR COMPETITION UNDER CAL. BUS. & PROF. CODE § 17200** *et seq.***;** <br> 7. **VIOLATION OF CAL. BUS. & PROF. CODE § 17500** *et seq.***; AND** <br> 8. **DECLARATORY ACTION.** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Honey & Butter, LLC ("H&B") by and through its undersigned counsel, filed the following Complaint, complaining of Defendants Christine Park and Does 1-10 (collectively referred to as Defendants) as follows:

**JURISDICTION AND VENUE**

1. This Court has original subject matter jurisdiction under 15 U.S.C. § 1121 (action arising under the Lanham Act); 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1338(a) (any Act of Congress relating to copyright or trademarks); 28 U.S.C. § 1338(b) (action asserting claim of unfair competition joined with a substantial and related claim under the trademark laws); and 28 U.S.C. § 1367 (supplemental jurisdiction).

2. Pursuant to 28 U.S.C. §1367(a), this Court has supplemental jurisdiction over the state claims herein in that these claims are related to, and form part of, the same case and controversy as the federal claims herein.

3. This Court has personal jurisdiction over the Defendants in that Defendants are conducting business in the State of California and in this District and have availed themselves of the benefits and protections of the same. All Defendants named herein have transacted business within California and contracted to supply goods or services in California in connection with the matters giving rise to the present suit. Defendants have also committed infringing acts outside of California causing injury to H&B in California, and Defendants regularly do or solicit business in California, and/or expect or reasonably should expect their infringing conduct to have consequences in California and derive substantial revenue from interstate commerce.

4. Venue is proper in this district under 28 U.S.C. §139l(b) and (c) because a substantial part of the events or omissions giving rise to the claims occurred in this district, a substantial part of the property that is the subject of the action is situated in this district, and the defendant maintains its principal place of business in this district.

//
//

## PARTIES

5. H&B is, and at all times relevant hereto was, a Company with its principal place of business in the State of California, County of Orange.

6. Defendant Christine Park is, and at all times relevant hereto was a resident of the State of California.

7. Does 1 – 10 are, and at all times relevant hereto were, by the nature of their conduct, liable to H&B for the misconduct alleged herein. At such time the true names and identities of the Doe Defendants are unknown as H&B has not ascertained the identity of Defendant's agents, representatives, servants and employees that performed acts outside the course and scope of such agency and/or employment and without the permission of Defendants. Furthermore, H&B has not ascertained the identity of other co-defendants that may have acted in concert with one or more of the Defendants, or contributed to or be partially liable for the infringement and/or other claims alleged herein. H&B will seek leave to amend this Complaint to allege their true names and capacities when the same have been ascertained.

## FACTS COMMON TO ALL CAUSES OF ACTION
### H&B's Use of Its Mark and Sale of Goods Since 2014

9. H&B is a Southern California company that has for years engaged and is now engaged in the manufacture, distribution, sale, advertising and promotion in interstate commerce of food products, including such food products known as macarons.

10. H&B, and prior to H&B's inception its predecessors in interest and now owners of H&B, have continuously used the HONEY & BUTTER Mark in connection with macarons at least as early as April 29, 2014.

11. Prior to the formation of H&B, the owners and predecessors of H&B registered a Fictitious Business Name for HONEY & BUTTER MACARONS with the Clerk Recorder for the County of Orange, and were the first to file such statement and were then and continue now to be actually engaged in the trade of selling macarons.

12. H&B now owns all rights in the HONEY & BUTTER Mark and is the owner of Federal Trademark Application with Serial Number 87697889, currently pending before the United States Patent and Trademark Office (USPTO).

13. H&B has made substantial investment in advertising and promoting its goods under its HONEY & BUTTER Mark since its initial use at least as early as April 29, 2014. H&B has extensively used, advertised, promoted and offered H&B's goods bearing the HONEY & BUTTER Mark to the public through various channels of trade in commerce, with the result that H&B's customers and the public in general have come to know and recognize the HONEY & BUTTER Mark and associate the same with H&B and/or the goods sold by H&B.

14. Since at least as early as April 29, 2014, its predecessors and then H&B have developed the brand through various channels including social media, where H&B has gathered a substantial following. On one particular social media site alone, H&B currently has well over one hundred and sixty thousand followers.

15. Throughout the years since it began using the HONEY & BUTTER Mark, H&B has been featured on magazine covers, featured in promotional videos and or written about in well-known publications including: Buzzfeed; Disney/Style by Disney Enterprises; Food & Wine; Insider; LA Times; OC Weekly; OC Register; Orange Coast Magazine; and others, each publication examining the unique macarons offered under the HONEY & BUTTER Mark and praising H&B's popularity and quality products. Moreover, H&B is continuously involved in collaborations with well-established businesses including apparel and toy manufacturer Tokidoki, specialty drink distributor Milk Box Bar, pop culture retailer Japan LA, and others to advertise and distribute throughout the United States H&B's macarons under the HONEY & BUTTER Mark.

16. Unlike other macaron shops, H&B offers and advertises, via its brick and mortar locations as well as through its virtual store, the unique option of character macarons. As one author wrote in a featured article "[t]hese macaroons turn the typical French dessert into pieces of hand-crafted art. By pipping extra macaroon batter into

different shapes attached onto the main "circle" of the macaroon, [H&B] is able to turn these already hard to make desserts into different pop culture characters." Character macarons have become synonymous with H&B and consumers easily associate character macarons with the HONEY & BUTTER Mark they have learned to love over the years.

17. Through its use of the HONEY & BUTTER Mark, and substantial advertising, promotion, and public exposure, H&B has developed valuable goodwill in its distinctive HONEY & BUTTER Mark, and the mark has become famous and distinctive.

**Defendant Launches her Current Online Business in late 2016 and Applies for a California Registration in May 2017**

18. Upon information and belief, Defendant registered a domain www.honeyandbutter.com ("Defendant's Site") as early as January of 2010.

19. Upon information and belief, including internet archival evidence, Defendant's Site was exclusively a food blog between January 2010 and August of 2016, through which no sales of macarons ever took place prior to September of 2016.

20. Upon information and belief, Defendant's Site excluded any virtual store until October of 2016.

21. Upon information and belief, Defendant does not currently and never has had a brick and mortar store for selling macarons.

22. Upon information and belief, Defendant did not have a license to sell baked goods such as macarons as of May 31, 2017, the filing date of California Trademark Registration 122272 (the '272 Registration).

23. Upon information and belief, as of the date of this Complaint, Defendant does not have a license to sell baked goods.

24. Upon information and belief, between 2014 and 2016 Defendant owned and operated or caused to be operated another website at www.fleurmacarons.com.

25. Upon information and belief, www.fleurmacarons.com was advertised on Defendant's Site throughout 2014 and 2016.

26. Upon information and belief, Defendant's Site linked to www.fleurmacarons.com where Defendant offered a virtual store for macarons.

27. Upon information and belief, while www.fleurmacarons.com was live and active as a virtual store Defendant sold macarons using the mark FLEUR MACARONS.

28. Upon information and belief, Defendant's business selling macarons under the mark FLEUR MACARONS failed.

29. Upon information and belief, www.fleurmacarons.com was parked or taken down by March of 2016.

30. Upon information and belief, Defendant's Site launched a virtual store selling macarons on or about October of 2016.

31. Upon information and belief, Defendant has had various social media handles, which Defendant has changed from time to time between 2010 and present day.

32. Upon information and belief, it was not until 2016 that Defendant began changing her social media handles to a variation of "honeyandbutter" such as "honeyandbutter_" and "@honey_andbutter".

33. Upon information and belief, Defendant was aware of H&B and their HONEY & BUTTER Mark at least in part because of H&B's wide social media exposure.

34. Upon information and belief, Defendant was aware of H&B and its HONEY & BUTTER Mark at least in part because the "honeyandbutter" handle was already taken by H&B on various social media platforms.

35. Upon information and belief, Defendant began advertising character macarons using the alleged mark HONEY AND BUTTER in 2016.

36. Upon information and belief, it was not until October of 2016 that Defendant began to duplicate the look and feel of H&B's social media site on the Instagram platform.

37. Upon information and belief, prior to filing an application for the '272 Registration, Defendant had knowledge of H&B and their HONEY & BUTTER Mark.

38. Upon information and belief, although Defendant has filed other Fictitious Business Names in Orange County California for another photography business as early

as 2011, Defendant did not file a Fictitious Business Name for HONEY AND BUTTER until June 8, 2017.

39. On or about October 3, 2017, Defendant, through her counsel, sent a letter to H&B threatening suit in federal court for trademark infringement of the '272 Registration.

40. On October 27, 2017, H&B sent a letter to Defendant's counsel that included a notice of preservation of evidence, placing Defendant on notice that evidence including social media histories and older posts should not be altered or deleted in any way.

41. Upon information and belief, after receipt of H&B's October 27th letter including the preservation of evidence notice, Defendant changed, or caused to be changed, previously dated online content to read "Honey & Butter" even though the original content read "Fleur Macarons."

42. Upon information and belief, one of the changes made by Defendant or caused to be made by Defendant, includes a December 20, 2013 dated post on Instagram of a photograph of macarons and a caption that previously read "teamed with Fleur Macarons at Pelican for the tournament. Thanks Fleur Macarons, they were awesome!" which now reads "teamed with Honey & Butter at Pelican for the tournament. Thanks Honey & Butter, they were awesome!". The December 20, 2013 date is stilled displayed.

43. Upon information and belief, other online records have been changed or altered to read "Honey & Butter" or a variation of the HONEY & BUTTER Mark after receipt by Defendant of H&B's October 27th letter including the preservation of evidence notice.

44. Upon information and belief, Defendant did not use Defendant's HONEY AND BUTTER Mark in connection with sale or offer for sale of macarons in commerce until 2016.

45. Upon information and belief, Defendant made knowing false statements as to (i) the use of Defendant's HONEY AND BUTTER Mark in commerce, (ii) the first use dates of that mark and (iii) the alleged exclusive and continuous use of the mark in Defendant's application for the '272 Registration.

46. Upon information and belief, Defendant made the false statements with the intent to procure a registration to which Defendant was not entitled, and Defendant was successful in procuring the '272 Registration.

47. Upon information and belief, Defendant's false statements were made knowingly; Defendant was clearly aware of H&B and its famous HONEY & BUTTER Mark.

## FIRST CLAIM FOR RELIEF

### (False Designation of Origin – Injunctive Relief and Damages)

48. H&B repeats and realleges each and every allegation contained in paragraphs 1 – 47, inclusive, as if fully recited in this paragraph.

49. H&B's HONEY & BUTTER Mark is inherently distinctive.

50. H&B first used the HONEY & BUTTER Mark long before Defendant used her HONEY AND BUTTER Mark in connection to macarons in commerce in California as well as in interstate commerce.

51. H&B's HONEY & BUTTER Mark has achieved market penetration throughout the United States and, at a minimum, in California.

52. H&B substantially used its HONEY & BUTTER Mark in commerce before Defendant used the HONEY AND BUTTER mark in relation to macarons.

53. H&B's market penetration was prior to Defendant's first bona fide use of the infringing HONEY AND BUTTER mark.

54. Defendant intends to and currently is directly competing with H&B in the social-media and online virtual stores for macarons.

55. Defendant's HONEY AND BUTTER mark so resembles the HONEY & BUTTER Mark so as to be likely, when applied to the goods of H&B, to cause confusion or mistake or to deceive purchasers resulting in damage and detriment of H&B and its reputation. In this regard, it should be noted that Defendant's mark is frequently displayed in connection with depictions of character macarons displayed in a nearly identical manner

as H&B displays their well-known character macarons. Thus, Defendant's continued mirroring of H&B's presentation on various social media sites and on Defendant's Site along with the use of the HONEY AND BUTTER Mark is likely to further strengthen the public's connection of Defendant's mark with H&B's famous HONEY & BUTTER Mark.

56. Defendants' use of the designation "HONEY AND BUTTER" in their labeling, advertising, marketing, and providing of their services for their own benefit, in such a fashion and design as to imitate H&Bs trademark "HONEY & BUTTER", constitutes a violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), on the grounds that it creates a likelihood of confusion among prospective purchasers and employees, and further on the grounds that such usage induces, or is likely to induce, prospective purchasers and employees and others to believe, contrary to facts, that Defendants' goods are advertised, prepared by, approved by, or otherwise connected in some way with H&B or with H&B's goods.

57. Defendants' use of the designation "HONEY AND BUTTER" in the manner alleged above constitutes a false designation of origin of Defendants' services, or false description or representation of Defendants' goods, in violation of Section 43(a) of the Lanham Act, 15U.S.C. § 1125(a).

58. Defendant's infringement of H&B's mark was willful and with knowledge that its use of the "HONEY AND BUTTER" mark would or was likely to cause confusion and deceive others.

59. Defendants will, if not enjoined by this Court, continue their acts of unfair competition by the use of the false designation and false representation set forth above, which has caused, and will continue to cause, H&B immediate and irreparable harm.

60. Pursuant to Section 34 of the Lanham Act, 15 U.S.C. § 1116, H&B is entitled to an order of this Court, effective during the pendency of this action and thereafter to be made permanent, enjoining Defendants, their officers, agents, and employees from using "HONEY AND BUTTER" alone or in combination with other words or any other colorable imitations of H&B's trademark "HONEY & BUTTER", in the advertising,

marketing, or sale of Defendants' goods or services.

61. As a result of Defendants' acts of unfair competition set forth below, H&B has suffered damages, the exact amount of which H&B has not yet been able to determine. Pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117, H&B is entitled to a judgment for damages not to exceed three times the amount of its actual damages, as shall be proved at trial, together with interest thereon, and for an amount equal to Defendants' profits derived from its unlawful and wrongful conduct.

62. Defendants' actions as set forth above entitle H&B pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117 to an award of attorneys' fees incurred in bringing this action.

## SECOND CLAIM FOR RELIEF

### (Common Law Trademark Infringement – Injunctive Relief and Damages)

63. H&B repeats and realleges each and every allegation contained in paragraphs 1 – 62, inclusive, as if fully recited in this paragraph.

64. Defendants' acts have damaged H&B's business reputation and have impaired and diluted H&B's goodwill in its trademark.

65. Unless enjoined by this Court, Defendants will continue their acts of trademark infringement, thereby deceiving the public and causing H&B immediate and irreparable harm and damage.

66. H&B is entitled to an order of this Court enjoining Defendants, their officers, agents, and employees, and anyone acting in concert with them, from using the phrase "HONEY AND BUTTER", alone or in combination with other words, or any other colorable imitations of the "HONEY & BUTTER" mark in Defendants' advertising, marketing, or sale of its products and services or in any other way in connection with the conduct of its business.

67. As a result of Defendants' conduct set forth above, H&B has suffered damages the exact amount of which H&B has not been able to determine. H&B is entitled

to recover from defendant such damages, together with interest thereon, and an amount equal to Defendant's profits derived from its unlawful and wrongful conduct.

## THIRD CLAIM FOR RELIEF

### (Unfair Competition in Violation of The Lanham Act)

68. H&B repeats and realleges each and every allegation contained in paragraphs 1 – 67, inclusive, as if fully recited in this paragraph.

69. Defendant has committed acts of unfair competition under 15 U.S.C. § 1125 et seq., including the practices and conduct referred to above. Not only does the conduct alleged constitute trademark infringement, but the content and promotion of Defendant's Site itself (and particularly its virtual store that went live on or about October of 2016) purposefully attempts to heighten the likelihood that consumers will be confused, and an inaccurate appearance of affiliation created. For example, Defendant arranged Defendant's Site and other social media platforms to mirror H&B's platform.

70. As a direct and proximate result of Defendant's wrongful acts, H&B has suffered and continues to suffer substantial pecuniary losses and irreparable injury to its business reputation and goodwill. As such, H&B's remedy at law is not adequate to compensate for past injuries inflicted by Defendant. Accordingly, H&B is entitled to temporary, preliminary and permanent injunctive relief.

71. By reason of such wrongful acts, H&B is and was, and will be in the future, deprived of, among others, the profits and benefits of business relationships, agreements, and transactions with various third parties and/or prospective business relationship.

72. Defendant has wrongfully obtained profit and benefits instead of H&B. H&B is entitled to compensatory damages and disgorgement of Defendant's said profits, in an amount to be proven at trial.

//
//
//

## FOURTH CLAIM FOR RELIEF

### (Trademark Dilution Under the Lanham Act)

73. H&B repeats and realleges each and every allegation contained in paragraphs 1 – 67, inclusive, as if fully recited in this paragraph.

74. H&B's HONEY & BUTTER Mark has acquired distinction from other marks through long, continuous, and exclusive use by H&B and or H&B's predecessors in interest.

75. H&B's HONEY & BUTTER Mark is famous and distinctive within the meaning of 15 U.S.C. §§ 1125 (c)(1) and 1127.

76. Defendant's unlawful activities described in this complaint constitute unauthorized use in interstate commerce of H&B's HONEY & BUTTER Mark.

77. Defendant's unlawful activities were conducted with full recognition of H&B's HONEY & BUTTER Mark and commenced after such trademarks had become famous.

78. On information and belief, such activities are likely to dilute, have diluted, and will continue to dilute or be likely to dilute, the distinctive quality of H&B's HONEY & BUTTER Mark by lessening the Mark's capacity to identify and distinguish H&B's goods and by blurring and tarnishing H&B's HONEY & BUTTER Mark to the damage and harm of H&B, its customers, and the public, in violation of 15 U.S.C. § 1125 (c)(1).

79. As a direct and proximate result of Defendant's wrongful acts, H&B is likely to suffer, has suffered, and continues to suffer or be likely to suffer dilution of the distinctive quality and the blurring and tarnishing of its HONEY & BUTTER Mark. Defendant will continue, unless restrained, to use marks confusingly similar to H&B's HONEY & BUTTER Mark and will cause irreparable damage to H&B. H&B has no adequate remedy at law. H&B is entitled to an injunction restraining Defendant, its officers, agents, and employees, and all persons acting in concert with Defendant, from engaging in further acts of dilution. Such harm will continue and increase until Defendant is preliminarily and permanently enjoined from its unlawful conduct.

80. H&B is further entitled to recover from Defendant the actual damages that it sustained and/or is likely to sustain as a result of Defendant's wrongful acts. H&B is presently unable to ascertain the full extent of the gains, profits, and advantages that Defendant has realized by reason of its acts of dilution.

81. H&B is informed and believes, and on that basis alleges, that Defendant committed the acts alleged above: (a) with previous knowledge of H&B's prior use of its various HONEY & BUTTER Marks; (b) with the willful intent to trade on H&B's goodwill and reputation; and/or (c) with the willful intent to cause dilution of H&B's HONEY & BUTTER Mark.

82. As a result, H&B has been damaged in an as yet unascertained amount. Because of the willful nature of Defendant's wrongful acts, H&B is entitled to an award of damages pursuant to 15 U.S.C. § 1117.

## FIFTH CLAIM FOR RELIEF

**(California Trademark Dilution Under Cal. Bus. & Prof. Code § 14247)**

83. H&B repeats and realleges each and every allegation contained in paragraphs 1 – 67, inclusive, as if fully recited in this paragraph.

84. H&B's HONEY & BUTTER Mark is distinctive and famous.

85. Defendant began using H&B's HONEY & BUTTER Mark in connection with Defendant's products after the trademark became famous.

86. Defendant's advertising, distribution, marketing, promotion, offer for sale, and/or sale of Defendant's products using H&B's trademark has injured the business reputation of H&B and dilutes and/or is likely to dilute the distinctive value of H&B's HONEY & BUTTER Mark in violation of Section 14247 of the California Business and Professions Code.

87. H&B has no adequate remedy at law. Injury to H&B and dilution of H&B's trademark will continue, all to H&B's irreparable harm, unless Defendant is enjoined by this Court.

## SIXTH CLAIM FOR RELIEF

**(Unfair Competition Under Cal. Bus. & Prof. Code § 17200 et seq.)**

88. H&B repeats and realleges each and every allegation contained in paragraphs 1 – 67, inclusive, as if fully recited in this paragraph.

89. By offering virtually identical goods under a virtually identical mark, Defendant has passed off its goods as those of the senior user, H&B.

90. Defendant has committed acts of unfair competition, including the practices and conduct referred to in this Complaint. These actions constitute unlawful, unfair or fraudulent business acts or practices, and/or unfair, deceptive, untrue or misleading business practices. The actions were done in connection with sales or advertising.

91. As a direct and proximate result of Defendant's wrongful acts, H&B has suffered and continues to suffer substantial pecuniary losses and irreparable injury to its business reputation and goodwill. As such, H&B's remedy at law is not adequate to compensate for injuries inflicted by Defendant. Accordingly, H&B is entitled to temporary, preliminary and permanent injunctive relief.

92. By reason of such wrongful acts, H&B is and was, and will be in the future, deprived of, among other damages, the profits and benefits of business relationships, agreements, and transactions with various third parties and/or prospective business relationships. Defendant has wrongfully obtained profit and benefits instead of H&B. H&B is entitled to compensatory damages and disgorgement of Defendant's said profits, in an amount to be proven at trial.

93. Such acts, as alleged above, were done with malice, oppression and/or fraud, thus entitling H&B to exemplary and punitive damages.

## SEVENTH CLAIM FOR RELIEF

**(Violation of Cal. Bus. & Prof. Code § 17500 et seq.)**

94. H&B repeats and realleges each and every allegation contained in paragraphs 1 – 67, inclusive, as if fully recited in this paragraph.

95. The tendency and effect of Defendants' continued use of the designation "HONEY AND BUTTER", alone or in combination with other words, in the advertising and marketing of its goods is to cause confusion, mistake, and deception as to the source or origin of Defendant's goods. Defendant's acts have damaged H&B's business reputation and have impaired and diluted H&B's goodwill in its trademark, and constitute false advertising within the meaning of California Business and Professions Code § 17500.

96. Unless enjoined by this Court, Defendant will continue its acts of false advertising, and trademark infringement, thereby deceiving and confusing the public and causing H&B immediate and irreparable damage.

97. As a result of Defendant's acts of false advertising, H&B has suffered damages, the exact amount of which H&B has not yet been able to determine. Pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117, H&B is entitled to a judgment for damages not to exceed three times the amount of its actual damages, as shall be proved at trial, together with interest thereon, and for an amount equal to Defendants' profits derived from its unlawful and wrongful conduct.

## EIGHTH CLAIM FOR RELIEF
### (Declaratory Action)

98. H&B repeats and realleges each and every allegation contained in paragraphs 1 – 67, inclusive, as if fully recited in this paragraph.

99. There currently exists between H&B and Defendant an actual, present, and justiciable controversy based on Defendant's filing of the '272 Registration and assertion of rights in a demand letter threatening a law suit in federal court. H&B requests that the court cancel the '272 Registration and declare that use of Defendant's mark HONEY AND BUTTER is a violation of H&B's trademark rights.

//
//
//

# REQUEST FOR RELIEF

**WHEREFORE**, H&B prays for judgement as follows:

100. Enter judgment for H&B on the counts named herein;

101. Award actual damages suffered by H&B as a result of Defendants' unlawful conduct, in an amount to be proven at trial, as well as prejudgment interest as authorized by law, but in no event less than the statutory minimum of this court;

102. An accounting of Defendants' profits pursuant to 15 U.S.C. § 1117;

103. A judgment trebling any damages awarded pursuant to 15 U.S.C. § 1117;

104. Punitive damages pursuant to California Civil Code § 3294;

105. Restitutionary relief against Defendants and in favor of H&B, including disgorgement of wrongfully obtained profits and any other appropriate relief;

106. Recovery of H&B's attorney's fees and full costs of suit;

107. Any other remedies to which H&B may be entitled, including all remedies provided for in 15 U.S.C. § 1117, 17 U.S.C. § 101, Cal. Bus. & Prof. Code §§ 17200, et seq., 17500, et seq., and any other California law.

Dated: December 15, 2017            Respectfully Submitted,

                                    /s/ Saul Acherman

                                    David V. Jafari SBN: 207881
                                    djafari@jafarilawgroup.com
                                    Saul Acherman SBN: 288036
                                    sacherman@jafarilawgroup.com
                                    JAFARI LAW GROUP, INC.
                                    18201 Von Karman Ave., Suite 1190
                                    Irvine, California 92612
                                    Telephone: (949)362-0100

                                    *Attorneys for Honey & Butter, LLC.*

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, and Local Rule 38-1, H&B respectfully demands a jury trial of all issues triable to a jury in this action.

Dated: December 15, 2017               Respectfully Submitted,

/s/ Saul Acherman

David V. Jafari SBN: 207881
djafari@jafarilawgroup.com
Saul Acherman SBN: 288036
sacherman@jafarilawgroup.com
JAFARI LAW GROUP, INC.
18201 Von Karman Ave., Suite 1190
Irvine, California 92612
Telephone: (949)362-0100

*Attorneys for Honey & Butter, LLC.*